**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

**PORTLAND DIVISION**

| | |
|---|---|
| **LAURIE KATHLEEN MCCAIN,** | **Case No.: 6:10-cv-6212-SI** |
| **Plaintiff,** | |
| **v.** | **OPINION AND ORDER** |
| **KINDRED HEALTHCARE, INC.,**<br>**a foreign corporation,** | |
| **Defendant.** | |

GLENN SOLOMON
1001 SW Fifth Avenue, Suite 1414
Portland, OR 97204

     Of Attorneys for Plaintiff


SCOTT OBORNE
MARK A. CRABTREE
Jackson Lewis, LLP
1001 SW Fifth Avenue, Suite 1205
Portland, OR 97204

     Of Attorneys for Defendant


OPINION & ORDER – PAGE 1

**SIMON, District Judge.**

Plaintiff Laurie McCain filed a Complaint for wrongful discharge against Defendant

Kindred Healthcare, Inc. ("KHI"), in Marion County Circuit Court on June 1, 2009. The Circuit

Court entered a default judgment against Defendant on December 17, 2009. The Circuit Court

granted Defendant's Motion to Vacate Default Judgment on April 30, 2010, finding the default

judgment void for inadequacy of service. Defendant removed the case on July 21, 2010, on the

basis of diversity jurisdiction. Defendant filed a Motion for Summary Judgment on September

22, 2011, arguing that, among other things, Plaintiff sued the wrong party. Because Defendant is

correct and there has been no motion to amend pursuant to Fed. R. Civ. P. 15(c)(1)(C),

Defendant's Motion for Summary Judgment is granted.

## FACTUAL BACKGROUND

Plaintiff named KHI as the only defendant in this case, alleging wrongful discharge. KHI

moves for summary judgment on the ground that it was not Plaintiff's employer.[1] KHI asserts

that it is merely a holding corporation with no control over Plaintiff's employment. Points

& Authorities in Support of Defendant's Motion for Summary Judgment ("Def.'s MSJ") 1;

Ballard Decl. ¶ 2. According to KHI, it owns a subsidiary, Kindred Healthcare Operating, Inc.

("KHO"), which in turn owns Kindred Nursing Centers West, LLC ("KNCW"), Plaintiff's actual

employer. Def.'s MSJ 2-3; Ballard Decl. ¶¶ 2-3. KNCW owns the operating license for

Sunnyside Care Center, where Plaintiff worked as Director of Nursing Services ("DNS"). Def.'s

MSJ 3; Ballard Decl. ¶¶ 2-3; Amended Oborne Decl., Ex. C. pp. 31-36 (printouts from Oregon

Secretary of State Corporations Division website, showing that KNCW is the authorized

representative for Sunnyside Care Center).

---

[1] Defendant also moves for summary judgment on the ground that the provisions of the Oregon Administrative
Rules at issue in this case do not create a public duty. Def.'s MSJ 1. The Court finds it unnecessary to address
Defendant's alternative argument.

OPINION & ORDER – PAGE 2

For purposes of a wrongful discharge claim, only an employer can discharge an employee. *Schram v. Albertson's*, 146 Or. App. 415, 427 (1997); *Ryan v. Patterson Dental Supply, Inc.*, 2000 WL 640859 at *26 (D. Or., May 12, 2000). Neither the Oregon legislature nor the Oregon state courts have established a definition of "employer" in the context of wrongful discharge. *Black's Law Dictionary*, however, defines an "employer" as "[a] person who controls and directs a worker under an express or implied contract of hire and who pays the worker's salary or wages." *Black's Law Dictionary* 604 (9th ed. 2009). The various Oregon statutory definitions of "employer," while not directly applicable in the wrongful discharge context, are consistent with the *Black's* definition in emphasizing that an employer must direct and control an employee and must provide the employee with some type of remuneration. *See* ORS §§ 654.005(4)-(5), 656.005(13)(a), 659.780(2)-(3).

Defendant KHI asserts that it exercised no control over Plaintiff's employment or discharge. In the Declaration of Jeremy Ballard, Corporate Counsel for KHO, Mr. Ballard states, "KHI never employed Plaintiff Laurie Kathleen McCain, and neither KHI nor any KHI employee was involved in the decision to terminate Plaintiff's employment." Ballard Decl. ¶ 6. Mr. Ballard further states, "KHI has never been authorized to transact business in Oregon or employed anyone in Oregon, does not transact business in Oregon and has no DBAs that transact business in Oregon." Ballard Decl. ¶ 2. In the Declaration of Gwynn Rucker, Director of Operations for KNCW, Mr. Rucker states that Plaintiff was hired, supervised, and discharged exclusively by KNCW employees, and that KHI had no right to participate, nor did it participate, in any of these activities. Rucker Decl. ¶¶ 2-6. During Defendant's August 31, 2011, deposition of Plaintiff, the following exchange occurred, in which Plaintiff appeared to admit that she did not know whether or not KHI was her employer:

OPINION & ORDER – PAGE 3

> OBORNE: The question is, do you know whether or not you're employed by Kindred Health Care, Inc.?
>
> MCCAIN: No.

Amended Oborne Decl., Ex. A (McCain Dep. p. 107).

Defendant KHI also asserts that it did not pay Plaintiff's salary. Mr. Ballard's Declaration states, "Throughout her employment at Sunnyside, Plaintiff's wages were paid by KNCW. Pursuant to the ASSA,[2] KHO processed payroll for KNCW, including issuing an IRS Form W-2 to Plaintiff as an agent for KNCW." Ballard Decl. ¶ 5. Plaintiff's Form W-2 was issued by "Kindred Healthcare Operating, Inc., Agent for Kindred Nursing Centers West, LLC, 680 South 4th Street, Louisville KY 40202." Amended Oborne Decl., Ex. A p. 22. Plaintiff's direct deposit slip dated 3/20/08, as well as her pay stubs dated 2/29/08-3/13/08, 10/10/08-10/23/08, and 8/29/08-9/11/08, are from "Kindred Nursing Centers West, LLC." Amended Oborne Decl., Ex. A pp. 23-26. In addition, during Plaintiff's deposition, the following exchange occurred, which suggests that Plaintiff "assumed" KNCW was her employer:

> OBORNE: Okay. See that Kindred Nursing Centers West, LLC issued you your paychecks. Right?
>
> MCCAIN: Yes, I see that.
>
> OBORNE: Do you know whether or not this entity, this LLC that issued you your paychecks, do you know if they were your employer?
>
> MCCAIN: They issued the paycheck. I would assume they were the employer, but I've never—we would get these stubs, but I never really looked at them. I looked at the figures. So I hadn't paid attention to that part.

Amended Oborne Decl., Ex. A (McCain Dep. pp. 104-05).

Plaintiff, however, argues that KHI was her employer, or, alternatively, that there is at least a genuine issue of fact precluding summary judgment as to whether or not KHI was her

---

[2] Administrative Support Services Agreement. Ballard Decl. ¶ 1.

OPINION & ORDER – PAGE 4

employer. Pl.'s Opp. to Def.'s MSJ 10. In her February 1, 2010, affidavit, Plaintiff states, "I was hired by Kindred Healthcare, Inc. in February of 2008 to be the Director of Nursing Services." McCain Aff. ¶ 1 (Feb. 1, 2010). Plaintiff's Affidavit contains several exhibits that Plaintiff contends are evidence that KHI was her employer. Exhibit A is Plaintiff's written offer of employment for the DNS position, which is from "Donna Kelsey, Senior Vice President of Operations, Kindred Healthcare, Pacific Region." McCain Aff., Ex. A. Exhibit B consists of Plaintiff's confidentiality agreement and conflict of interest certificate. The confidentiality agreement states, "Laurie McCain ("EMPLOYEE"), in consideration of her employment by Kindred Healthcare, or one of its subsidiaries ("Kindred Healthcare"). . .". McCain Aff., Ex. B. The conflict of interest certificate is called the "Kindred Healthcare Conflict of Interest Statement." McCain Aff., Ex. B.

Exhibit C is a description of Plaintiff's job, printed on letterhead that says "Kindred Healthcare." McCain Aff., Ex. C.  Exhibit D is Plaintiff's business card, which says she works at "Sunnyside Care Center, A Kindred Healthcare Community." McCain Aff., Ex. D. Exhibit E is a welcome letter to Plaintiff on "Kindred Healthcare" letterhead. McCain Aff., Ex. E. The letter refers to Plaintiff's employer as "Kindred" and "Kindred Healthcare," and the second page of the letter states, "You will also be invited to attend a company orientation at our head office in Louisville, KY . . .". McCain Aff., Ex. E. Exhibit F is Plaintiff's health insurance card, which indicates that her employer is "Kindred Health Care." McCain Aff., Ex. F. Exhibit G is a printout of the "Facility Finder" page from http://www.kindredhealthcare.com; it shows Sunnyside Care Center, where Plaintiff worked. McCain Aff., Ex. G.

Exhibit H is an explanation of the bonus system, which states it is from "Kindred Healthcare, Inc." McCain Aff., Ex. H. This is the only document that Plaintiff presents that says

OPINION & ORDER – PAGE 5

"Kindred Healthcare, Inc." An excerpt from an employee handbook is attached as an exhibit to McCain's second affidavit. Second McCain Aff., Ex. 1 (Nov. 4, 2011). The excerpt states in pertinent part, "The terms 'Kindred' and 'Kindred Healthcare' are used interchangeably in this Handbook and refer to Kindred Healthcare Operating, Inc., and its subsidiary companies and affiliated partnerships." Second McCain Aff., Ex. 1.

## LEGAL STANDARDS

The court must grant a motion for summary judgment if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party must demonstrate the absence of a dispute as to a material fact. *Rivera v. Philip Morris, Inc.,* 395 F.3d 1142, 1146 (9th Cir. 2005). In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and show there is a genuine dispute as to a material fact for trial. *Id.* An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Villiarimo v. Aloha Island Air, Inc.,* 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). The court draws all reasonable inferences supported by the evidence in favor of the nonmoving party. *Villiarimo*, 281 F.3d at 1061.

## DISCUSSION

The Court grants Defendant's Motion for Summary Judgment. The evidence, particularly the Form W-2, direct deposit slip, pay stubs, and the Ballard and Rucker Declarations, shows that KNCW controlled and directed Plaintiff's employment and paid her salary, and there is no evidence that KHI participated in these activities. If KHI was not Plaintiff's employer, it could not have terminated her employment, and therefore is not the proper defendant for her wrongful discharge claim.

OPINION & ORDER – PAGE 6

Plaintiff's evidence does not raise a genuine dispute as to the identity of Plaintiff's employer. Plaintiff's evidence shows only that "Kindred" and "Kindred Healthcare" were sometimes used as "umbrella" terms to refer to KHI or its direct and indirect subsidiaries. *See, e.g.,* McCain Aff., Ex. B. When the terms "Kindred" and "Kindred Healthcare" were used in this manner, the document usually explained the usage. *See id.* The use of "Kindred" and "Kindred Healthcare" to describe KHI and its direct and indirect subsidiaries—most of which contained these terms in their names—does not indicate that KHI controlled Plaintiff's employment or paid her salary.

Plaintiff's statement in her affidavit that she was hired by KHI also does not raise a genuine factual issue because it is an unsupported, conclusory statement that was not made on the basis of personal knowledge. McCain Aff. ¶ 1. This type of statement is insufficient to defeat a properly supported motion for summary judgment. *Hernandez v. Spacelabs Medical, Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003) (once the moving party has satisfied its burden of production, the nonmoving party "cannot defeat summary judgment with allegations in the complaint, or with unsupported conjecture or conclusory statements.").

Even Plaintiff's strongest piece of evidence, a one-page explanation of a bonus system that is the only document containing the exact name of Defendant, "Kindred Healthcare, Inc.," does not raise a genuine dispute as to the identity of Plaintiff's employer. McCain Aff., Ex. H. First, this exhibit is not authenticated, as required for evidence submitted at the summary judgment stage. Fed. R. Civ. P. 56(c), (e); *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). The exhibit cannot be authenticated through Plaintiff's personal knowledge because (1) Plaintiff does not state in the affidavit to which Exhibit H is attached that she has personal knowledge of the facts stated therein; and (2) even if Plaintiff had stated that she had

OPINION & ORDER – PAGE 7

personal knowledge of these facts, this statement would have been contradicted by Plaintiff's

own deposition testimony that she did not know whether KHI was her employer, and that she

assumed KNCW was her employer. Fed. R. Evid. 901(b)(1); McCain Aff., Ex. H; Amended

Oborne Decl., Ex. A (McCain Dep. pp. 104-05, 107). Exhibit H also cannot be not authenticated

in any other manner, nor did Plaintiff attempt to authenticate it in another manner. *See* Fed. R.

Evid. 901.

Not only is Plaintiff's bonus document not authenticated, the bonus program it describes

does not appear to apply to Plaintiff. Andrea Romisher, KHO's Vice President for Benefits and

Compensation, states in her Declaration that because Plaintiff was terminated prior to the

payment date for the 2008 bonus program, Plaintiff did not receive any bonus payments.

Romisher Decl. ¶ 5. Ms. Romisher also states that any bonus payments would have been made

by KNCW, and that KHI had no involvement in the bonus system. Romisher Decl. ¶ 4. Attached

as an exhibit to Ms. Romisher's Declaration is what Ms. Romisher declares to be "[t]rue and

correct copies of documents relating to that incentive compensation program," which do not

include the exact name of Defendant. Romisher Decl. ¶ 4, Ex. B. In contrast to Plaintiff's

unauthenticated Exhibit H, Ms. Romisher's version of the bonus document is authenticated by

Ms. Romisher's personal knowledge of the bonus program and her review of relevant files and

documents in the ordinary course of business. Romisher Decl. ¶ 1. Thus, Plaintiff's "bonus

document" does not raise a genuine factual dispute as to the identity of Plaintiff's employer.

Plaintiff also argues that this court should follow the reasoning of the Oregon Court of

Appeals in *Oregon Occupational Safety and Health Division v. Jeld-Wen, Inc.*, in which it

affirmed in part and reversed in part an order of the Workers' Compensation Board ("Board")

upholding citations issued to Jeld-Wen by the Oregon Occupational Safety and Health Division

OPINION & ORDER – PAGE 8

("Division"). *Jeld-Wen, Inc.*, 163 Or. App. 418 (1999). The Court of Appeals rejected

Jeld-Wen's argument that the Division erred in issuing citations to Jeld-Wen, instead of to its

wholly owned subsidiary, Bend Millwork Systems, Inc., where the violation occurred. *Id.* at

422-23. The Court held that substantial evidence supported the Board's findings that: (1) Jeld-

Wen's safety manager also provided safety services to Bend Millwork Systems, Inc., and

frequently failed to identify which entity he was working for; (2) Jeld-Wen's safety manager

wrote to the Division representing that Jeld-Wen was "the employer" in the case; (3) Jeld-Wen

allowed other litigation involving the Division to proceed when it was named as employer in a

1993 citation against Bend Millworks; and (4) it was standard operating procedure at Jeld-Wen

and subsidiaries to "mix and match" the names of the various DBAs and corporations. *Id.* at

420-24.

    *Jeld-Wen* is inapplicable to the present case for several reasons. First, Jeld-Wen did not

attempt to keep the different entities in its corporate family separate from one another. *Id.* at

422-24. In contrast, KHI, KHO, and KNCW have consistently attempted to keep their corporate

identities discrete, as demonstrated by the issuance of Plaintiff's W-2 and paychecks by KNCW

and the issuance of the employee handbook by KHO. Amended Oborne Decl., Ex. A pp. 22-26;

Second McCain Aff., Ex. 1. Second, there was evidence that Jeld-Wen actually exercised control

and direction over safety practices at Bend Millwork Systems, Inc. *Jeld-Wen*, 163 Or. App. at

420-21. In contrast, as discussed at length *supra*, there is no evidence that KHI exercised any

control or direction over Plaintiff's employment. Third, as the Court of Appeals emphasized,

*Jeld-Wen* involved appellate review of administrative agency action under the substantial

evidence standard, which is more deferential than the summary judgment standard present in this

case. *Jeld-Wen, Inc.*, 163 Or. App. at 424 ("the question on review is not whether substantial

OPINION & ORDER – PAGE 9

evidence supports petitioner's version of the facts but whether, after considering the whole record, substantial evidence supports the Board's findings.").

Finally, Plaintiff argues that there is no difference between the various companies in the Kindred group, and that they all constitute same company. Pl.'s Opp. to Def.'s MSJ 1-2. Yet Plaintiff produces no evidence showing that KHI, KHO, and KNCW are a single company, and there are no allegations, let alone any evidence, to support an "alter ego" or "corporate veil piercing" theory of liability. Therefore, Plaintiff fails to raise a genuine issue of fact as to whether KHI, KHO, and KNCW are a single entity.

## CONCLUSION

Defendant's Motion for Summary Judgment is GRANTED.

IT IS SO ORDERED.

Dated this 7th day of December 2011.

 /s/ Michael H. Simon
Michael H. Simon
United States District Judge